UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

T.W.E., an infant by his mother and natural guardian
Melissa Ellingworth; and MELISSA ELLINGWORTH,
individually,

                        Plaintiffs,

v.                                                                                  5:25-CV-1243
                                                                                     (GTS/MJK)
JORDAN ELBRIDGE CENTRAL SCHOOL
DISTRICT; and THE BOARD OF EDUCATION FOR
THE JORDAN ELDBRIDGE CENTRAL SCHOOL
DISTRICT,

                        Defendants.
_____

APPEARANCES:                                          OF COUNSEL:

TULLY RINCKEY PLLC                                SEAN E. GLEASON, ESQ.
  Counsel for Plaintiffs
400 Linden Oaks, Suite 110
Rochester, NY 14625

1203 Troy-Schenectady Road, Suite 101        MATTHEW PAUL RICCI, ESQ.
Latham, NY 12110

BOND, SCHOENECK & KING, PLLC                JEREMY M. SHER, ESQ.
  Counsel for Defendants                          TRAVIS TALERICO, ESQ.
350 Linden Oaks, Third Floor
Rochester, NY 14625

One Lincoln Center                                    KATHERINE RITTS SCHAFER, ESQ.
Syracuse, NY 13202

GLENN T. SUDDABY, United States District Judge

## **DECISION and ORDER**

Currently before the Court, in this action filed by T.W.E. and his mother and natural

guardian Melissa Ellingworth ("Plaintiffs") against the Jordan Elbridge Central School District

("District") and the Board of Education for the Jordan Elbridge Central School District ("School Board") (collectively "Defendants"), is Defendants' motion to partially dismiss Plaintiffs' Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 5.) For the reasons set forth below, Defendants' motion is granted.

## I. RELEVANT BACKGROUND

### A. Plaintiffs' Complaint

Generally, in their Complaint, Plaintiffs assert seven causes of action: (1) a claim of discrimination, or deliberate indifference to discrimination, pursuant to Title VI of the Civil Rights Act of 1964 based on T.W.E.'s race; (2) a claim of a violation, or deliberate indifference to a violation, of T.W.E.'s right to equal protection based on his race pursuant to 42 U.S.C § 1983 and the Equal Protection clause of the United States Constitution; (3) a claim of discrimination pursuant to the New York State Human Rights Law ("NYSHRL") found at N.Y. Exec. L. § 296(4); (4) a claim of negligent supervision pursuant to New York law; (5) a claim of negligent infliction of emotional distress ("NIED") pursuant to New York law; (6) a claim of intentional infliction of emotional distress ("IIED") pursuant to New York law; and (7) a claim that Defendants failed to comply with their statutory and ministerial obligations pursuant to the Dignity for All Students Act ("DASA"). (Dkt. No. 2.)

### B. Parties' Briefing on Defendants' Partial Motion to Dismiss

#### 1. Defendants' Memorandum of Law

Generally, in their motion to dismiss, Defendants make five arguments. (Dkt. No. 5, Attach. 1.) First, Defendants argue that Plaintiffs have failed to state a claim under either Title VI or the NYSHRL because they have asserted these claims under a theory of deliberate

indifference but have failed to allege any actual knowledge of the relevant student conduct by an official who had the authority to implement corrective measures, and they have failed to allege facts plausibly suggesting deliberate indifference given that (a) Plaintiff admits that two of the perpetrators of the harassment received in-school suspensions and a plan was drafted to determine how to respond to T.W.E.'s anxiety and (b) there are no allegations that Defendants were ever made aware of further harassment in 2024 after those measures were taken. (*Id.* at 8-12.)

Second, Defendants argue that Plaintiffs have failed to state a claim pursuant to Section 1983 because they have not alleged facts plausibly suggesting any relevant custom, policy, or practice of inadequate training or supervision of the School District's employees, relying instead on conclusory allegations. (*Id.* at 12-14.)

Third, Defendants argue that Plaintiffs have failed to state a claim for NIED because that claim is duplicative of the claim for negligent supervision in that both claims are based on the same set of facts and seek the same damages. (*Id.* at 14-15.)

Fourth, Defendants argue that Plaintiffs have failed to state a claim for IIED because the Complaint does not allege that Defendants intentionally harmed T.W.E., merely that they failed to intervene to stop the conduct of other students. (*Id.* at 15-16.)

Fifth, Defendants argue that Plaintiffs have failed to state a claim under DASA because that statute does not confer a private right of action. (*Id.* at 16.)

### 2. Plaintiffs' Opposition Memorandum of Law

Generally, in their opposition to Defendants' motion, Plaintiffs make six arguments. (Dkt. No. 9.) First, Plaintiffs argue that they have sufficiently alleged deliberate indifference to

plead their claims pursuant to Title VI and the NYSHRL because the Complaint clearly alleges repeated instances in which discriminatory conduct was reported to Defendants (which reports Defendants found to be substantiated), yet Defendants failed to provide T.W.E. with protection. (*Id.* at 7-9.)

Second, Plaintiffs argue that they have sufficiently stated a claim for municipal liability pursuant to Section 1983 because they have alleged widespread, repeated failures by Defendants to discipline offending students, protect T.W.E., and follow their statutory duty, as well as relevant policies and training/supervision inadequacies.  (*Id.* at 9-11.)

Third, Plaintiffs argue that they have stated a plausible claim for NIED because (a) such claim is based on a factual basis distinct from the factual basis of their negligent supervision claim and therefore is not duplicative of that other claim, and (b) they have alleged facts showing emotional distress caused by Defendants' failure to intervene to stop racially harassing conduct towards T.W.E.  (*Id.* at 11-12.)

Fourth, Plaintiffs argue that they have stated a plausible claim for IIED because they have alleged facts plausibly suggesting a persistent campaign of racial harassment and abuse that was enabled by Defendants' indifference and that reasonably qualifies as extreme and outrageous conduct.  (*Id.* at 12-13.)

Fifth, Plaintiffs concede that DASA "does not create a standalone private cause of action," but argue that the statute nevertheless "has significant legal relevance to this action" because failure to follow the obligations and protocols required by DASA is "highly probative of deliberate indifference" and negligence.  (*Id.* at 13-15.)

4

Sixth, Plaintiffs argue that, should the Court find any part of the Complaint to be deficient, they should be granted leave to amend the Complaint to correct those pleading defects. (*Id.* at 15-16.)

### 3.    Defendants' Reply Memorandum of Law

Generally, in their reply, Defendants make seven arguments.  (Dkt. No. 10.)  First, Defendants argue that Plaintiffs cannot rely upon facts not pled in the Complaint, and the Court should therefore disregard any such previously unpled facts present in their Opposition Memorandum of Law when deciding this motion.  (*Id.* at 4.)

Second, Defendants argue that Plaintiffs have failed to meaningfully oppose Defendants' argument that they have failed to state a claim pursuant to either Title VI or the NYSHRL, and that those claims are not supported by sufficient plausible allegations because (a) Plaintiffs failed to plead facts identifying any individual who had both knowledge of the alleged harassment and the authority to institute corrective measures, (b) Plaintiffs' own factual allegations contradict their assertion that Defendants failed to act or investigate the reports of harassment, and (c) Plaintiffs have failed to plead any allegations plausibly suggesting that Defendants knew that the remedial actions they did take were insufficient to stop the harassment, specifically given that they do not allege that they reported further instances of harassment in 2024.  (*Id.* at 5-6.)

Third, Defendants argue that most of Plaintiffs' arguments related to a failure to train or supervise or a custom of failing to enforce protections are not alleged in the Complaint, and the only relevant allegations that are in the Complaint are too conclusory to sustain their municipal liability claim.  (*Id.* at 6.)

Fourth, Defendants argue that Plaintiffs have failed to state a claim for NIED because, contrary to their argument, that claim is based on the same facts and damages as other negligence claims.  (*Id.* at 6-7.)

Fifth, Defendants argue that Plaintiffs have failed to state a claim for IIED as well because (a) IIED claims may not be asserted against government entities, and (b) the facts alleged in the Complaint do not rise to the level of extreme and outrageous conduct even in light of the case Plaintiffs cite in support.  (*Id.* at 7-8.)

Sixth, Defendants argue that Plaintiffs' argument that DASA establishes standards related to the duty a school owes to students or what conduct would constitute deliberate indifference related to the claims here is not supported by any authority.  (*Id.* at 8-9.)

Seventh, Defendants argue that Plaintiffs' request to amend is improper because they have not complied with the requirements of this Court's Local Rule 15.1 and have not demonstrated that they can cure the defects in the Complaint.  (*Id.* at 9.)

## II.     GOVERNING LEGAL STANDARD

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim.  *Jackson v. Onondaga Cty.*, 549 F. Supp.2d 204, 211 nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J.) (adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding that ground is appropriate.  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a

6

pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212 n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212 n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212 n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp. 2d at 213 n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 560-61, 577. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 555-70. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. at 555. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (internal quotation marks and citations omitted). However, while the plausibility standard "asks for more than a sheer

8

possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S. Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated. Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.[1]

---

[1]     *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual

## III.   ANALYSIS

### A.   Whether Plaintiffs Have Stated a Claim for Municipal Liability Under 1983

After careful consideration, the Court answers the above-stated question in the negative

for the reasons stated in Defendants' memoranda of law.  *See, supra,* Parts I.B.1 and 3 of this

Decision and Order.  To those reasons, the Court adds the following analysis.

In this case, Plaintiffs have sued both the Jordan Elbridge Central School District and that

District's Board of Education.  Because both entities are considered to be municipalities for the

purposes of a Section 1983 claim, Plaintiffs are required to meet the special conditions inherent

in asserting such a claim against a municipality.  *See Doe v. Patrick*, 437 F. Supp. 3d 160, 172

n.11 (N.D.N.Y. 2020) (Kahn, J.) ("School districts and boards of education are considered

municipal entities.").

---

background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010)
(explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may
consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and
documents incorporated by reference in the complaint. . . .  Where a document is not
incorporated by reference, the court may nevertheless consider it where the complaint relies
heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . .
However, even if a document is 'integral' to the complaint, it must be clear on the record that no
dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that
there exist no material disputed issues of fact regarding the relevance of the document.")
[internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147,
152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as
an exhibit or any statements or documents incorporated in it by reference.") (internal quotation
marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72
(2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or
incorporate by reference a [document] upon which it solely relies and which is integral to the
complaint," the court may nevertheless take the document into consideration in deciding [a]
defendant's motion to dismiss, without converting the proceeding to one for summary
judgment.") (internal quotation marks and citation omitted).

The elements of a municipal liability claim under *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978), are "(1) a municipal policy or custom that (2) causes the plaintiff to be subjected to (3) the deprivation of a constitutional right.'" *Chislett v. New York City Dep't of Educ.*, 157 F.4th 172, 184 (2d Cir. 2025) (quoting *Agosto v. New York City Dep't of Educ.*, 982 F.3d 86, 97 [2d Cir. 2020]). "A municipality cannot be held liable on a theory of *respondeat superior*; the plaintiff must establish that the municipality's policy or custom *itself* was a 'moving force of the constitutional violation.'" *Chislett*, 157 F.4th at 184 (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 [1978]) (emphasis in original). "'To show a policy, custom, or practice [justifying municipal liability], the plaintiff need not identify an express rule or regulation.'" *Chislett*, 157 F.4th at 184 (quoting *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 226 [2d Cir. 2004]) (alteration in original). "It suffices to establish that discriminatory practices were 'persistent and widespread' so as 'to constitute a custom or usage with the force of law' and that a discriminatory practice of subordinates was 'so manifest as to imply the constructive acquiescence of senior policymaking officials.'" *Chislett*, 157 F.4th at 184 (quoting *Surlucco v. New York City Police Dep't*, 971 F.2d 864, 870-71 [2d Cir. 1992]).

Here, in support of their municipal liability claim, Plaintiffs allege only that (a) Defendants, acting under the color of state law, had actual knowledge of ongoing racial harassment but failed to take appropriate action, and (b) they "have demonstrated customs, policies, or practices of failing to train staff and protect students from discrimination." (Dkt. No. 2, at ¶¶ 29-34.) These conclusory statements, unsupported by factual elaboration, are insufficient to plausibly suggest a policy or custom of the District or the School Board that led to the alleged harm.

11

Plaintiffs do not allege facts plausibly suggesting the existence of any formal policy related to failing to address claims of racial harassment against students.  Moreover, nothing in Plaintiffs' Complaint plausibly suggests a *persistent or widespread* practice of failing to address claims of student racial discrimination, much less one that implies any constructive acquiescence by policymaking officials for the District or School Board.  Notably, although Plaintiffs name a number of relevant individuals in the Complaint who received complaints about the harassment or themselves witnessed the harassment, they do not identify what role any of those individuals held in their employment or office with the District and/or School Board.  For instance, most notably, Plaintiffs allege that Plaintiff Ellingworth reported her harassment concerns to John Schaeffer and Lynette Delfavero and that they failed to take appropriate action, but it is not clear what role or office they held within the District and/or School Board.  Plaintiffs also allege two incidents in January and April 2024 when staff members Mr. Cooper and Renee Armpriester allegedly witnessed racially discriminatory comments in classes; but it is again unclear what role or office either of those individuals held, and, to the extent that the fact these incidents occurred in class would lead to the reasonable conclusion that they are teachers, there are no allegations to suggest that either of them, as teachers, had the ability to exercise any authority on behalf of the District or the School Board.  There are also no allegations to suggest that any policymakers for Defendants were ever made aware of any of the alleged incidents that occurred in 2024.

Further, Plaintiffs' allegations regarding a handful of incidents—which were all reported or occurred within the span of approximately a month in 2023 and, in one instance, resulted in the perpetrating students being disciplined with in-school suspension, while later incidents in January, April, and May of 2024 are not alleged to have been reported to school administrators

12

or seemingly any individual with policymaking authority—do not suggest a *persistent and widespread* practice of ignoring discrimination and harassment that could constitute a de facto policy.

Lastly, to the extent Plaintiffs vaguely assert a failure to train subordinate staff like teachers (or even administrative staff like principals or vice principals) on how to properly address instances of student racial discrimination and harassment, they include no factual allegations regarding what training was (or was not) provided in that respect or how such training itself was deficient.

For all of the above reasons, Plaintiffs' Section 1983 claim must be dismissed.

### B.    Whether Plaintiffs Have Stated a Discrimination Claim Pursuant to Either Title VI or the NYSHRL

After careful consideration, the Court answers the above-stated question in the negative for the reasons stated in Defendants' memoranda of law.  *See, supra,* Parts I.B.1 and 3 of this Decision and Order.  To those reasons, the Court adds the following analysis.

"Title VI prohibits a recipient of federal funds [including public educational institutions] from discriminating on the basis of race, color, or national origin." *Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 665, 664 (2d Cir. 2012).[2]  "[I]n the educational setting, a school district is liable for intentional discrimination when it has been 'deliberately indifferent' to teacher or peer harassment of a student." *Zeno*, 702 F.3d at 665 (citing *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 643 [1999]).  The standard for deliberate indifference in this

---

[2]    "In the Second Circuit, a claim under the NYSHRL is evaluated under the same standard as an analogous claim under a federal antidiscrimination law," which includes Title VI.  *Minto v. Molloy Univ.*, 715 F. Supp. 3d 422, 431 (E.D.N.Y. 2024).

context is "a narrow one," under which "[l]iability only arises if a plaintiff establishes: (1) substantial control, (2) severe and discriminatory harassment, (3) actual knowledge, and (4) deliberate indifference." *Zeno*, 702 F.3d at 665 (citing *Davis*, 526 U.S. at 643-50).

A school district can be said to exercise "substantial control over the circumstances of the harassment when it occurs 'during school hours and on school grounds.'" *Zeno*, 702 F.3d at 665 (citing *Davis*, 526 U.S. at 646). In order for harassment under such circumstances to be actionable, it "must be 'severe, pervasive, and objectively offensive' and discriminatory in effect," meaning that it "'restrict[s] an individual in any way in the enjoyment of any advantage or privilege enjoyed by others receiving any service, financial aid or benefit,'" which includes "am academic environment free from racial hostility." *Zeno*, 702 F.3d at 665-66 (citing *Davis*, 526 U.S. at 650-51; *Hayut v. State Univ. of New York*, 352 F.3d 733, 750 [2d Cir. 2003]; 34 C.F.R. § 100.3[b][1][iv]). Further, the defendant school district must have *actual* knowledge of the harassment; "[c]onstructive knowledge is not enough." *Zeno*, 702 F.3d at 665-66 (citing *Davis*, 526 U.S. at 641-43). Lastly, in terms of deliberate indifference, such finding "depends on the adequacy of a school district's response to the harassment": "[a] failure to respond, . . . a response that 'only follows after a lengthy and unjustified delay,' . . . and a response that 'amount[s] to deliberate indifference to discrimination,' . . . have all been found inadequate." *Zeno*, 702 F.3d at 666 (internal citations omitted). In assessing whether the district's actions were deliberately indifferent, a court considers whether those actions "were 'clearly unreasonable in light of the known circumstances.'" *Zeno*, 702 F.3d at 666 (citing *Davis*, 526 U.S. at 648).

Defendants' arguments regarding this claim address both whether they had actual knowledge of the alleged conduct and whether they acted on any such knowledge with deliberate indifference. The Court agrees that Plaintiffs' Complaint fails to sufficiently allege actual knowledge of the existence of a degree of harassment that would meet the required level of severity. As previously discussed related to their municipal liability claim, Plaintiffs have generally not alleged what role or office individuals identified in the Complaint held at the relevant time, an omission that makes it nearly impossible for the Court to assess whether a sufficiently high-ranking official had actual knowledge of the alleged harassment. Specifically, the Complaint alleges that Plaintiff Ellingworth reported the various February incidents to Mr. Schaeffer and Ms. Delfavero, but there is no indication what position either of those individuals held. Similarly, in their allegations related to an incident in March 2023 (the result of which was in-school suspension for the perpetrators), Plaintiffs offer no indication of what role or office any of the individuals alleged to have knowledge held. As to the alleged incidents in January and April 2024, again, the relevant allegations appear to suggest that the staff members who were aware of those incidents were teachers, not high-ranking officials for the District or members of the School Board, and thus their knowledge cannot reasonably be imputed to Defendants.

The only allegations that could suggest any knowledge by the District or the School Board involves Plaintiffs' allegations that (a) "during a school board meeting, Mr. Froio admitted that the offenders had not been disciplined" for certain incidents reported by Plaintiff Ellingworth in February 2023, (b) at the same meeting, "board member William Yard acknowledged that the school had failed to respond appropriately to the abuse T.W.E. had been enduring," and (c) approximately two weeks after that School Board meeting and two days after

15

another incident in March 2023, "the District drafted a plan outlining how staff should respond to T.W.E.'s anxiety, but the plan failed to address how the school would protect him from further racial abuse." (Dkt. No. 2, at ¶¶ 14, 17.)  Because these allegations provide at least some plausible suggestion that the District and members of the School Board had knowledge of those incidents Plaintiff Ellingworth reported in February 2023, the question becomes whether Defendants' response to that knowledge constituted deliberate indifference.

Before conducting that analysis, the Court notes that the only occurrences of harassment that Plaintiffs have even arguably sufficiently alleged actual knowledge of on the part of Defendants are those that Plaintiff Ellingworth reported to Mr. Schaeffer and Ms. Delfavero in February 2023, and the one alleged incident in March 2023.  Nothing in the allegations related to the incidents in 2024 suggest, let alone plausibly, that the District or the School Board was made aware of any of those incidents, or indeed that they were made aware that the harassment continued at all after their intervention in March 2023.  As a result, the Court will only consider the 2023 incidents when assessing the pattern of harassment for the purposes of determining whether Plaintiffs have plausibly suggested that Defendants were deliberately indifferent under the circumstances.

While it is true that Plaintiffs allege that Defendants essentially did nothing in response to the incidents reported in February, they do acknowledge that the perpetrators of the March incident were disciplined with in-school suspension, and that, soon after, the District drafted a plan "outlining how staff should respond to T.W.E.'s anxiety." (Dkt. No. 2, at ¶¶ 16-17.)  Although Plaintiffs allege that this response was inadequate, their Complaint does not support that assertion.  Notably, after this plan was drafted (and presumably put into effect) on March 29,

16

2023, the next alleged incident of harassment was not until January 2024.  (*Id.* at ¶¶ 17-18.)

Moreover, again, no allegations support an inference that Defendants were ever made actually

aware of any of the incidents that occurred in 2024.  Because Defendants had no apparent reason

to believe that their intervention had not been effective to stop the harassment, there was no

deliberate indifference in their failure to take any further action after March 2023.  *See Zeno*, 702

F.3d at 670 (noting that "a delay before implementing further remedial action" can be

problematic "*once a school is aware of its ineffective response*") (emphasis added).

As to the 2023 harassment, Plaintiffs allege that, on February 9, 2023, Plaintiff

Ellingworth met with Mr. Schaeffer and Ms. Delfavero and reported the following conduct

against T.W.E.:

> Students at the school had mocked Plaintiff's race by saying things
> like "if I'm wearing black I am black," referring to T.W.E. as "the
> brown kid," making offensive guttural noises they told him were
> his "native talk," suggesting he bleach his skin, calling him the
> [sic] "the n-word", stealing his chocolate milk "because he's
> Black," and saying they were asserting "white power."

(Dkt. No. 2, at ¶ 9.)  It is not clear when precisely this conduct took place, only when it was

reported.  On February 13, 2023, Plaintiff Ellingworth emailed Mr. Schaeffer about "a student

unknown to T.W.E. calling him 'the n-word' in the hallway."  (*Id.* at ¶ 11.)  On February 14,

2023, she informed Mr. Schaeffer that another Black student was experiencing "similar racial

harassment" as T.W.E.  (*Id.* at ¶ 12.)  On March 27, 2023, students C.G. and P.R. called T.W.E.

"the n-word."  (*Id.* at ¶ 16.)

The response to these complaints of harassment consisted of (a) Mr. Schaeffer telling

Plaintiff Ellingworth on February 17, 2023, that her DASA complaints related to the incidents

were all "founded," but that, in Plaintiffs' words, "no meaningful action was going to be taken

on the complaints," during which conversation he called the students engaging in this conduct "'knuckleheads'" and suggested that T.W.E. "simply move lunch tables and avoid the perpetrators," (b) School Board member William Yard acknowledging on March 15, 2023, that the school had failed to respond appropriately to the complaints of conduct against T.W.E., (c) following the incident on March 27, 2023, C.G. and P.R. being disciplined with in-school suspension, and (d) on March 29, 2023, the District drafting "a plan outlining how staff should respond to T.W.E.'s anxiety" over the incidents.  (Dkt. No. 2, at ¶¶ 13, 14, 16, 17.)

The allegations in the Complaint simply do not plausibly suggest that Defendants' response to the circumstances presented was clearly unreasonable.  First, there is again the problem of Plaintiffs' failure to allege what position or office was held by Mr. Schaeffer, which renders the Court incapable of assessing whether he was a sufficiently high-ranking official who could take meaningful action on behalf of Defendants.  Second, assuming Mr. Schaeffer is not a District official or a School Board member, the allegations in the Complaint include no allegations to suggest that anyone from the District or the School Board was aware of Mr. Schaeffer's choice to not impose discipline until potentially March 15, 2023, and they could not reasonably remedy sooner what they were not aware of.  Third, the fact that School Board member Mr. Yard may have expressed that the school had failed to respond appropriately does not plausibly suggest that Defendants' failure to belatedly take action regarding those earlier complaints was clearly unreasonable, given that they had occurred approximately a month prior and there had been no new apparent incidents of harassment in the interim time period.  Fourth, although no action was taken on those earlier complaints even after March 15, 2023, the Complaint does acknowledge that, when another incident occurred on March 27, 2023, the

18

perpetrating students were in that case disciplined with in-school suspension in short order and only a few days later the District drafted a plan to instruct staff on how to respond to T.W.E.'s anxiety surrounding the incident(s).  Considering the totality of the circumstance presented by the allegations in the Complaint, those factual allegations do not suggest that Defendants' response was clearly unreasonable, particularly in light of the Second Circuit's instruction that "when weighing the adequacy of a response, a court must accord sufficient deference to the decisions of school disciplinarians." *Zeno*, 702 F.3d at 666 (citing *Davis*, 526 U.S. at 648).

For the above reasons, Plaintiffs' discrimination claims must be dismissed.

### C.    Whether Plaintiffs Have Plausibly Stated Claims Pursuant to State Law

Although the Court has found that Plaintiffs' federal claims must be dismissed for failure to state a claim under either Title VI or Section 1983, the Court will consider Defendants' arguments regarding Plaintiffs' state law claims in this Decision and Order because it finds that permitting Plaintiffs leave to file a motion to amend would not be inherently futile (in that it may yet be possible for them to allege additional facts that could remedy the identified defects as to one or both of those claims), and thus addressing the state law claims on the current motion serves the interests of judicial efficiency.  The Court notes that, as an initial matter, Defendants have not moved to dismiss Plaintiffs' claim for negligent supervision and the Court will therefore not address that claim.

### 1.    IIED

"In New York, 'a claim for intentional infliction of emotional distress requires a showing of (1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct

19

and the injury; and (4) severe emotional distress.'" *Wagner v. Copenhagen Cent. Sch. Dist.*, 25-CV-0659, 2026 WL 60750, at \*13 (N.D.N.Y. Jan. 8, 2026) (Sannes, C.J.) (quoting *Stuto v. Fleishman*, 164 F.3d 820, 827 [2d Cir. 1999]). "Conduct must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" *Wagner*, 2026 WL 60750, at \*13 (quoting *Stuto*, 164 F.3d at 827). This is a "rigorous" standard and one that is "difficult to satisfy," and also one that is a matter of law for a court to decide. *Wagner*, 2026 WL 60750, at \*13 (quoting *Baez v. JetBlue Airways*, 745 F. Supp. 2d 214, 223 [E.D.N.Y. 2010]). Conduct that consists of "mere insults, indignities, and annoyances," or "[i]nsults, bullying, and general harassment" generally does not suffice. *Kamdem-Ouaffo v. Balchem Corp.*, 17-CV-2810, 2018 WL 4386092, at \*15 (S.D.N.Y. Sept. 18, 2018) (citing *Liebowitz v. Bank Leumi Trust Co. of New York*, 152 A.D.2d 169, 182 [N.Y. App. Div. 2d Dept. 1989]; *Gorman v. Covidien, LLC*, 146 F. Supp. 3d 509, 535 [S.D.N.Y. 2015]); *see Daniels v. Alvarado*, 03-CV-5832, 2004 WL 502561, at \*6 (E.D.N.Y. Mar. 12, 2004) ("Racial slurs on their own do not constitute conduct so 'extreme and outrageous' in nature as to sustain a claim for intentional infliction of emotional distress."); *Riscili v. Gibson Guitar Corp.*, 06-CV-7596, 2007 WL 2005555, at \*4 (S.D.N.Y. July 10, 2007) ("Generally, insults and slurs do not satisfy this strict standard.") (collecting cases).

It is well established that public policy bars claims for IIED against government entities, which, as was discussed above related to the Section 1983 claim, a school district and its school board are considered to be. *See Blanco v. Success Academy Charter Schs., Inc.*, 722 F. Supp. 3d 187, 217 (S.D.N.Y. 2024) (finding IIED claims barred against a charter management organization and a public charter school); *Crvelin v. Bd. of Educ. of City Sch. Dist. of City of*

20

*Niagara Falls*, 144 A.D.3d 1649, 1650 (N.Y. App. Div. 4th Dept. 2016) (finding motion to dismiss IIED claim was properly granted as against school district and school board members in part because "public policy bars claims sounding in [IIED] against a governmental entity"); *accord Boyle v. Caledonia-Mumford Cent. Sch.*, 140 A.D.3d 1619, 1620-21 (N.Y. App. Div. 4th Dept. 2016).  As a result, Plaintiffs' IIED claims cannot be brought against Defendants.

Even when the merits of Plaintiffs' claim are considered, the alleged harassment consisted of students making comments about T.W.E.'s race, making offensive noises or gestures meant to reference his race in a disparaging manner, suggesting that he bleach his skin, stealing his milk because of his race, glaring at him, and on a few occasions calling him an offensive racial slur.  (Dkt. No. 2, at ¶¶ 9, 11, 16, 18-20.)  While this conduct certainly has no place in an educational (or indeed any) setting, it does not rise to the level required by the law to be considered "extreme and outrageous" for the purposes of an IIED claim.  *See Greene v. Trustees of Columbia Univ.*, 234 F. Supp. 2d 368, 382-83 (S.D.N.Y. 2002) (finding that frequent and repeated conduct and remarks over the course of more than a year implicating racial stereotypes and which a reasonable person could find offensive were insufficient to meet the "extreme and outrageous" standard).

Moreover, the question is not merely whether that conduct was itself extreme and outrageous, but rather whether Defendants' failure to act in a different manner to stop that conduct was extreme and outrageous, given that Plaintiffs' theory of liability is not that Defendants directly engaged in the harassing and offensive conduct, but instead failed to remedy and stop that conduct by others.  *See Benacquista v. Spratt*, 217 F. Supp. 3d 588, 606 (N.D.N.Y. 2016) (Hurd, J.) (finding IIED claim not properly pleaded where the plaintiff failed to allege that

21

the school district or school board's failure to investigate complaints about a teacher's conduct was itself sufficient to render those defendants liable). The allegations in the Complaint do not suggest that Defendants engaged in any concerted, systematic, deliberate and malicious campaign of, as relevant to this action, ignoring this conduct against T.W.E. *Blanco*, 722 F. Supp. 3d at 217. As was discussed above, there is no indication that Defendants were aware of any conduct outside of that which was reported to them in February and March 2023, and Plaintiffs themselves allege that the relevant students were disciplined with in-school suspension as to the March 2023 incident in which they called T.W.E. a racial slur, after which there were no more apparent incidents until January 2024 (and, again, there is no allegation to suggest Defendants were made aware of the alleged incidents in 2024). *See Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 161 (2d Cir. 2014) (noting that "[e]ven a sluggish or incompetent response to two, three, or four complaints might not rise to clear the high bar set for this tort in this State").[3]

Additionally, as Defendants argue, apart from a conclusory assertion, Plaintiffs have not alleged facts plausibly suggesting that Defendants' actions were taken with the intent to cause T.W.E. severe emotional distress or with sufficiently reckless disregard to a substantial probability of such harm. This is also fatal to their IIED claim.

For the above reasons, Plaintiffs' IIED claim must be dismissed.

> ### 2. NIED

---

[3] Although Defendants do not explicitly argue for dismissal of this claim based on the nature of the conduct in their initial memorandum of law, Plaintiffs notably do respond with arguments as to why the alleged conduct meets the requirement of "extreme and outrageous," and Defendants respond to those arguments in their reply memorandum of law. (Dkt. No. 9, at 12-13; Dkt. No. 10, at 7-8.) As a result, the Court finds that sufficient notice and opportunity to be heard have been afforded for the Court to consider the pleading sufficiency of this claim.

Defendants' sole argument for dismissal of Plaintiffs' NIED claim is that, because it is based on the same set of facts and seeks the same damages related to the breach of the same duty as their claim for negligent supervision, it should be dismissed as duplicative of that other negligence claim. (Dkt. No. 5, Attach. 1, at 14-15.) "A NIED claim cannot be asserted if it is 'essentially duplicative of tort or contract causes of action.'" *Doe v. Uber Techs., Inc.*, 551 F. Supp. 3d 341, 364 (S.D.N.Y. 2021). Such a cause of action should be dismissed where "the allegations supporting the NIED claim track the allegations supporting" other negligence-based claims, such as where they are based on the same conduct or the same breach of duty that is the premise for those other claims. *Doe*, 551 F. Supp. 3d at 365-65 (collecting cases); *see AA by BB v. Hammondsport Cent. Sch. Dist.*, 527 F. Supp. 3d 501, 510 (W.D.N.Y. 2021) (dismissing NIED claim as duplicative of negligent supervision claim where "[t]he conduct that forms the bases for plaintiff's NIED claim is precisely the same conduct that underlies her claims of negligent supervision, and her allegations of a breach of duty, causation and resulting harm are identical for both").

Although Plaintiffs attempt to differentiate these two claims, a comparison of the allegations related to those claims shows that they are premised on the same conduct and harm. (*Compare* Dkt. No. 2, at ¶¶ 43-44 [alleging as to negligent supervision claim that Defendants breached their duty to T.W.E. by "failing to prevent or address the racial discrimination and harassment T.W.E. endured," as a result of which "T.W.E. suffered psychological harm and was forced to leave school"] *with* Dkt. No. 2, at ¶¶ 46-47 [alleging as to NIED claim that "Defendants' failure to act in the face of consistent and long-term racially hostile conduct created a risk of emotional harm to T.W.E. that was foreseeable and avoidable," and that "T.W.E.

23

experienced severe emotional distress, anxiety, and depression as a direct result of this negligence"]).  These two claims use different phrasings, but both at their core allege that Defendants' failure to take appropriate action to prevent or stop the alleged harassment of T.W.E. by other students was the cause of T.W.E.'s psychological and/or emotional injuries.

For these reasons, Plaintiffs's NIED claim must be dismissed.

### 3.    DASA

Defendants argue—and Plaintiffs concede—that DASA does not provide a private right of action.  (Dkt. No. 9, at 14-15.)  Whether the standards and responsibilities imposed on school districts by DASA may or may not be relevant to determining whether a defendant acted with deliberate indifference as relevant to other claims does not change that fact (nor must the Court decide that issue on this motion), and so Plaintiffs' asserted claim pursuant to DASA must be dismissed as a matter of law.  *See Terrill v. Windham-Ashland-Jewett Cent. Sch. Dist.*, 176 F. Supp. 3d 101, 108-09 (N.D.N.Y. 2016) (Suddaby, C.J.) (finding no express or implied private right of action exists under DASA); *accord AA by BB*, 527 F. Supp. 3d at 513 (W.D.N.Y. 2021); *C.T. v. Valley Stream Union Free Sch. Dist.*, 201 F. Supp. 307, 326-27 (E.D.N.Y. 2016); *Motta ex rel. Motta v. Eldred Cent. Sch. Dist.*, 141 A.D.3d 819, 820 (N.Y. App. Div. 3rd Dept. 2016).

### D.    Whether Plaintiffs Should Be Granted Leave to Amend Their Complaint

Here, Plaintiffs specifically request leave to amend their Complaint if the Court should find any deficiencies in their pleading of their claims.  (Dkt. No. 9, at 15-16.)  While the Court agrees with Plaintiffs that it does not appear that permitting leave to amend as to some of their claims would be inherently futile (in that they may be able to plead additional facts to remedy some of the identified deficiencies), rather than granting leave to amend as requested, it will

24

instead permit Plaintiffs to file a proper motion seeking leave to amend that complies with the requirements of this Court's Local Rule 15.1(a). Plaintiffs notably have not attached an unsigned copy of their proposed amended pleading as required by that rule, and they have provided no indication as to what amendments they would make if given leave to amend. Under these circumstances, they are required to file a separate motion for leave to amend.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' partial motion to dismiss (Dkt. No. 5) is **GRANTED**; and it is further

**ORDERED** that the following claims are **DISMISSED** with prejudice:

(1) Plaintiffs' IIED claim; and

(2) Plaintiffs' claim pursuant to DASA; and it is further

**ORDERED** that the following claims are **DISMISSED** without prejudice to amendment in this action upon a successful motion to amend under N.D.N.Y. L.R. 15.1 filed **within THIRTY (30) DAYS** of the entry of this Decision and Order, and **with prejudice** upon the failure to file such a successful motion to amend:

(1) Plaintiffs' Section 1983 claim;

(2) Plaintiffs' discrimination claims pursuant to both Title VI and the NYSHRL; and

(3) Plaintiffs' NIED claim.

Dated: May 1, 2026
      Syracuse, New York

Glenn T. Suddaby
U.S. District Judge

25